I would, first of all, may the court please, I'm Arthur Pirelli, P-I-R-E-L-L-I. All right. Judge Jones, can you hear all right? Yes, although his voice is weak. Okay. Okay. It's okay then. I won't think you're yelling at me. Just go for it. Very well. And how much did you want to reserve? I would like to reserve two minutes. All right. Thank you. The one issue that was certified here, Your Honor, as you well know, is whether the appellant's right to due process was violated when the prosecutor informed the jury in the trial that a co-defendant had been convicted by a different jury after that co-defendant had raised a similar defense. And we would submit that there are two grounds that are appropriate for granting the writ here. One being the prosecutorial misconduct on the part of the prosecutor in the case and the other being the confrontation clause violation. The misconduct, as I've indicated, was that in the trial of Mr. Sandifer, the prosecutor in cross-examining Mr. Sandifer questioned him with regard and indicated that he was presenting a similar defense to the defense that his co-defendant, Mr. Drayton, had presented in his case. Well, assuming, just for sake of argument, that that's error. You know, obviously the other things that you have to confront are, apparently there were a couple of admonitions to the jury on that point, correct? And whether that was sufficient and then the whole nature of the evidence, whether the evidence was overwhelming or all of that. And then when you get to the confrontation issue, I think we want to leave some time for that. I think we indicated we wanted you to address the retroactivity of Crawford, but I think also it would be important to address whether the prosecutor's statements are testimonial under Crawford. Very well, Your Honor. I'm a little more interested in the second part of it. The second part of it. So I'm a little more interested in the second part of the, on the Crawford part of it. So if you want to spend your time that way, I don't think you need to spend a lot of time on the first part of it. We're familiar with the arguments. You mean the prejudice in that? Yes, I mean just whatever you want to highlight. Well, I would just indicate that this particular prosecutorial misconduct was extremely egregious and went to the basis of a fair jury trial and being tried by an impartial jury as well as the confrontation. And those are two of the most significant aspects of the right to trial. There was one admonishment, Your Honor, and that was after the cross-examination experience. And actually there were two occasions during the cross-examination where the prosecutor went into it. And then there was an admonishment. We would submit initially that this conduct is so egregious that an admonishment just simply can't cure it. Well, what about the, my understanding of the evidence is that the petitioner was one of two men who shot the victim in this case and that he confessed to the shooting and that his right hand tested positive for gunshot residue. How do you say that that's, you know, I mean, he's got a tough hill to climb on that issue. That's very correct. But first of all, I'd say that we never got to he never got to climb that issue with this degree of prejudice and what was put before this particular jury. It's our jury was lost at that point. But as far as the residue on the right hand, it it also came out and is shown. And there was testimony to the fact that that could you could have residue without even shooting, shooting a weapon. And as far as his confession is concerned, he attempted to retract it within 15 minutes from when it was given and attempted to get the officer's attention to do so on two different occasions and was unable to do so. And he did in his testimony of trial explain his reasons for what he said in the confession. And I would point out that there was a considerable amount of drug activity connected with this. And one never knows what's transpiring among the parties in terms of. He said that there were certain fears that he had experienced and certain reasons that he had done what he did. I would lastly point out that as far as the confession is concerned, as we point out in the briefs, there are several aspects of his confession that are just totally illogical and don't fit in to to what took place. And that's that's why I believe that there are some questions with regard to the evidence that it's not overwhelming. And secondly, that he didn't even get a chance to to have the jury properly consider these. As far as the prosecutor's statements, testimonial under Crawford. Well, because it's our position that the prosecutor is is specifically putting before the jury what the statements and evidence were in the. In the initial trial in Drayton's trial and that. The prosecutor in putting that out and repeating that actually becomes the witness for the terms of what the declarant had said in the trial and that he's actually giving testimony, he's not giving an opinion, he's not arguing, he's he's actually giving testimony. And then as far as the management is concerned. I mean, would you concede, though, that that just is a little bit different than Crawford? I mean. Yes, I will. I agree. Exactly the same nature. Correct. I agree that the issue is, is this testimonial from the standpoint that it came from the prosecutor? But I certainly think that it is when he's giving testimony from a previous trial. Number one. And I do think that. What was the testimony he. Pardon me? What could you paraphrase the testimony? I think two things. One was one was what he said when he was cross-examining Drayton himself, which is certainly testimony. And that was he was questioning Drayton and specifically brought out and asked Drayton. Didn't your codependent get convicted giving the same or similar defense in a previous trial? He asked the question. Yes. He didn't testify to it. No. The question was asked in the in the previous trial of the codependent. Yeah. But what testimony did he give? Well, it's our position that he's testifying when he's putting forth before the jury. When he asks the question, he's testifying. Pardon me? Your position is when he when he asks a question, he is testifying. In that particular question, I would say yes, because that's asking the question. That's the one I'd submit. That's more of a statement than a question. And he was well, I think it's a question. Was there anything else? But in addition, in the closing, he twice referred to the previous conviction. What did he say? And the first time he said, I've told you that the evidence is overwhelming. However, Mr. Sandifer is entitled to a trial just like his codependent's trial. And then he subsequently made reference to the fact that his testimony that his codependent had a trial and that the codependent was convicted. He indicated that the codependent. Did he say that? I believe he did. Yes. Do you believe it? Well, one moment. Yes, I believe he said it when he then said and he presented this and it was a similar defense. He brought that out. It was a similar defense. What does he actually say? Well, I'm asking you. That's what you're complaining about. The problem may be is that you are. We're talking in Crawford about an out of court statement that's offered in court to prove a fact and dispute or an issue. In this case, the prosecutor made reference to an undisputed fact that the other person was convicted of a crime, the same crime. But where is the out of court statement? Where is the hearsay statement? And I think the answer has to be there is none. You're referring to prosecutorial misconduct as you focused your appeal because there isn't any hearsay statement unless you can identify one. I think that was the comment by Judge Jones. And I think the statement that you're referring to was the prosecutor's question. Well, you know you talked to Mr. Drayton since his conviction, haven't you? I think that's what you're referring to when you said the prosecutor mentioned the conviction, correct? Correct. And where is the hearsay, is Judge Jones' question? Where's the what? Hearsay. Where is that a hearsay statement? Well, I think that combined again with what he also said in the closing. Well, what did he say in closing? You see, in closing, he doesn't say anything about somebody else's out of court statement. Your Honor, he does say that there had been a similar defense, and he actually says in the cross-examination portion, and the similar defense did not fly. And then he goes on in further questioning of witnesses where he's talking about the fact that Mr. Sandefur has made corrections or additions in order to compensate the defendant. And I unfortunately, I don't like this, but I unfortunately can't put my finger on it. Let me just ask, we're actually over your time, but we've taken up part of your time, so I'll allow you one minute on rebuttal. But I want to make sure. Judge Jones, did you have any other questions of the appellant? No. All right. I think just from the standpoint, when you come back on your one minute if you want to, the parts that I think I noticed two parts here, that first you have, in fact, Mr. Drayton told you a very similar story to the story that you told, didn't he? To my knowledge, yes, he did, sir. In fact, you've talked to him since. Yes, sir. And you're aware that the story didn't sell, so you've had to come up with other witnesses to sell your story, haven't you? Answer, no, the witnesses have been around for a while, and you know that. Then the other part I think that you're referring to is the question, well, you know, you've talked to Mr. Drayton since his conviction, haven't you? Answer, yes. That's what I sort of, but anyway, I'll give you a minute on rebuttal. Thank you very much. All right, thank you. Thank you. May it please the Court, Peggy Ruffray, Deputy Attorney General for Respondent. It's our position that the state court reasonably concluded that any prosecutorial misconduct in this case was harmless and that Mr. Sandifer was not denied a fair trial. Now, the questions that the court has been asking about, the prosecutor's questions on cross-examination, happened because the prosecutor was trying to impeach Mr. Sandifer for having recently fabricated this defense, just as his co-defendant, Mr. Drayton, had. And, in fact, he was trying to show the jury that they had gotten together to fabricate the defense. What happened was Mr. Sandifer confessed in 1990, and then Drayton's brother conveniently died in 1991. The trial was not until 1995. Then both defendants blamed the conveniently dead brother as the person who actually died. I guess the thing is here, are you saying that it wasn't error for the prosecutor to cross-examine in that fashion and mention the other trial and the other conviction? The state court found that there was some error there. So that's still your position, but you're saying it's harmless. Correct. And the state court relied on two facts, that the jury was cautioned expressly not to consider that evidence in determining whether Mr. Sandifer was guilty, and they were immediately cautioned after the objection where the prosecutor mentioned the word conviction. And I don't think that the cautionary statement is in any of the pleadings that we submitted to the court, although it is in the record, which was before the district court. So I'd like to just briefly read it. Immediately after the prosecutors made that statement or asked that question, the court said, there has been evidence indicating that a person other than Mr. Sandifer was or may have been involved in the crime for which he's on trial. I instruct you now that there may be many reasons why that person is not here on trial, and your job is to decide whether the people have proved the guilt of this defendant, whether or not they've done that. Therefore, you are not to discuss during your deliberations, and you are not to give any consideration whatsoever as to why the other person isn't being prosecuted in this trial. Furthermore, you are not to give any consideration or discuss whether or not he had been tried or he will be prosecuted. To the extent there is anything in this record to indicate that he has been, you are to disregard it. Your sole duty is to decide whether the people have proved the guilt of Mr. Sandifer. Well, so essentially there were two cautionary instructions. That was given right after the question, and then there wasn't. That's sort of a good news, bad news. It's like if, yeah, they did it twice, but the prosecutor also did it twice. So if it, you know, that kind of compounds the error. I think the prosecutor only mentioned the word conviction once during the cross-examination. The statement he made in his closing was simply, the evidence against Mr. Sandifer is overwhelming, but he is entitled to a trial just like his co-defendant was. And then the jury was admonished with this same instruction during the final closing instructions. So the broader question here is whether it was reasonable for the state court to find that that instruction and the overwhelming nature of the evidence against Mr. Sandifer cured any prejudice. And we contend that that was clearly objectively reasonable. This case is actually most like the United States v. Solomon case, which was mentioned in the petitioner's briefing and which Judge Noonan authored. In that case, the court actually told the jury that some other co-defendants had been prosecuted and were going to be coming in front of him for sentencing, but said, don't consider that. And the court found, just as the state court did in this case, that in light of the overwhelming evidence and the cautionary instruction, that any error was harmless. All right. What's the testimonial on the go-to-the-Crawford issue? Yes. Now I'd like to address the Crawford issue. First, the retroactivity of Crawford is currently briefing and is currently pending in front of this court in briefing in several cases. It's rather a lengthy briefing, and if the court wants any additional written briefing on that, we can certainly supply it. It's very clear to us that it's not retroactive, which would eliminate any possibility of it applying to this case. And there is a new Second Circuit case decided December 28th. We have that. The question is, does Crawford even come into play under the facts in this case? We don't believe it does. And it's hard to see that. State your reason why you believe that. It's hard to see how it fits into the Crawford rubric when the prosecutor is cross-examining for the purpose of trying to impeach the defendant. Maybe it could be construed as the prosecutor stating the fact of the conviction. That was the only thing I could come up with that would possibly get it into the hearsay realm. But Crawford itself said that business records are an exception to the Crawford rule, and under California law, the fact of a conviction is admissible as either an official record or a business record. So the only way I could find that it would apply at all is actually an exception. So we don't see that it's testimonial in the nature that Crawford was trying to get at at all. It's also not even clear that it was offered for the truth of the matter asserted, since this was in the context of impeachment. In other words, the prosecutor was trying to show Sandifer's knowledge of his co-defendant's conviction after the same story didn't sell at the co-defendant's trial. And if that's the case, then it's a non-hearsay purpose. So Crawford doesn't apply at all. Crawford indicated in that opinion that that was an exception, citing Tennessee v. Street. So for all those reasons, I don't think this fits into the rubric of Crawford at all, aside from the fact that it's our position that Crawford is not retroactive. Also, there was no confrontation clause objection preserved at the trial in this case. That wasn't the basis of the defense attorney's objection at all. He was saying that he thought the mention lightened the prosecutor's burden of proof. So I think for all those reasons, it's very clear to us that Crawford does not apply in this case. And so then we simply come back to it was reasonable for the state court to find that there was no prejudice. All right. Are there any other questions by the panel? All right. Thank you. Thank you. I would simply point out that the hearsay statement we submit is the statement of the story that Drayton gave at his trial that the prosecutor is now putting before this jury. Does he actually say what the story is, or does he just reference saying you're telling the same story? Well, I think for purposes of the harm to the defendant, saying that the same story led to conviction, that's one of the problems. We don't know what the whole story is that he gave. We don't know what other evidence, and I submit that he puts the entire previous trial into evidence when he raises this issue. But the jury didn't hear the story in the other trial. I mean, it has to be what the jury heard, too. What the jury heard is you're telling the same story, your co-defendant. Correct. Okay. And obviously there was no opportunity to cross-examine with regard to that, and that's our position here. All right. Thank you. Thank you very much. All right. This matter then will stand submitted. The court will now call Mark Edward Jones v. J.R. Sargent.
judges: Noonan, Callahan, Jones